UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE SAM BERNSTEIN LAW FIRM, PLLC,

                   Plaintiff,

vs.

BETTER CALL SAM, THE LAW OFFICE OF
SAMANTHA MAGUIRE, PLLC, and,
SAMANTHA MAGUIRE,

                   Defendants.

**DECISION AND ORDER**

25-CV-0252-MAV

---

In July 2025, Plaintiff The Sam Bernstein Law Firm, PLLC ("Bernstein") filed a motion to strike several of Defendant Samantha Maguire's affirmative defenses, and to dismiss her counterclaims. ECF No. 13. For the reasons stated below, Bernstein's motion is granted in part and denied in part. Maguire's counterclaims are dismissed without prejudice, and her Fourth and Fifth affirmative defenses are stricken.

## BACKGROUND

The following background has been drawn from Bernstein's complaint. The factual allegations contained in the complaint have been accepted as true, and all reasonable inferences drawn in Bernstein's favor. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 26 (2d Cir. 2019).

Bernstein describes itself as one of the leading personal injury law firms in the nation, representing over 100,000 clients from around the country. ECF No. 1 ¶ 1. It started using the slogan CALL SAM in 1984, and now owns two federally registered

1

trademarks – (1) CALL SAM, and (2) 1-800-CALL-SAM – both of which have attained "incontestable" status. *Id.* ¶¶ 2–3. The firm uses 1-800-CALL-SAM as its primary phone number, and has spent millions of dollars on advertisements using the CALL SAM mark to promote its brand in print media, on radio shows and television broadcasts, on its websites and social media, and through billboard advertising. *Id.* ¶¶ 4, 19, 30–31.

Defendant Samantha Maguire is the founder and principal of Defendants Better Call Sam and The Law Office of Samantha Maguire. *Id.* ¶ 38. In September 2024, Defendants began promoting their legal services on Facebook by posting a message that read, in pertinent part, "Welcome to Better Call Sam, the Law Office of Samantha Maguire, PLLC! . . . . Remember, when you're in a jam, you Better Call Sam!" *Id.* ¶ 39. In addition, Defendants' law firm domain name is "bettercallsam.net" and their website prominently features the "Better Call Sam" slogan. *Id.* ¶¶ 41–42. Defendant Maguire has applied to register the trademark "BETTER CALL SAM IF YOU'RE IN A JAM, YOU BETTER CALL SAM!," and submitted a business card which uses "Better Call Sam" in multiple places. *Id.* ¶ 46. Bernstein contacted Defendant Maguire soon after she began using the "Better Call Sam" slogan, but was unable to resolve the dispute amicably. *Id.* ¶ 50.

Therefore, in March 2025, Bernstein filed the instant complaint, alleging trademark infringement under both Section 32 and Section 43(a) of the Lanham Act against Defendants Better Call Sam, The Law Office of Samantha Maguire, PLLC, and Samantha Maguire. ECF No. 1. After Bernstein agreed to an extension for

2

Defendants to answer, Defendant Samantha Maguire, an attorney not presently admitted to practice before this Court, filed an answer on behalf of all Defendants. ECF No. 12. In addition to denying Bernstein's claims, Maguire's answer included several affirmative defenses and two counterclaims seeking declaratory judgment of non-infringement. *Id.* Bernstein's motion to strike several of the affirmative defenses and to dismiss Maguire's counterclaims are presently before the Court.

## MAGUIRE'S PRO SE STATUS

At the outset, the Court must address an issue it raised in a prior order. In September 2025, the Court noted that the Second Circuit has made clear that "'a limited liability company . . . may appear in federal court only through a licensed attorney.'" ECF No. 14 (quoting *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007)). Indeed, the Circuit has stated that the attorney must be "licensed to practice law before our courts." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). Under the Local Rules of this District, "only Members in good standing of the bar of this Court may appear as attorneys of record." Loc. R. Civ. P. 83.2. Accordingly, Defendant Maguire was advised in the Court's prior order that, to the extent that she seeks to represent Defendants BETTER CALL SAM and Samantha Maguire PLLC, she must verify her admission in this District. ECF No. 14.

To date, despite attempts by the Clerk of Court to contact her, Maguire has failed to apply for or verify her admission in this District. Accordingly, the Court finds that she may not appear as attorney of record for Defendants BETTER CALL SAM and Samantha Maguire, PLLC. Thus, the answer and counterclaim filed in June 2025

[ECF No. 12] serves as a responsive pleading only on Maguire's behalf, and BETTER CALL SAM and Samantha Maguire, PLLC have not yet answered the complaint.

Further, the Court observes that although a pro se litigant is typically afforded a "degree of solicitude" so as not to inadvertently forfeit certain rights, "a lawyer representing h[er]self ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys . . . typically cannot claim the special consideration which the courts customarily grant to pro se parties." (internal quotations omitted)). Because Maguire maintains that she is a licensed attorney in the state of New York, the Court will not grant solicitude to Maguire due to her pro se status. *See Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 7 (2d Cir. 2020); *Knopf v. Esposito*, 803 F. App'x 448, 454 n.1 (2d Cir. 2020).

## LEGAL STANDARDS

### A. Trademark Infringement

"To prevail on a trademark infringement claim under the Lanham Act, the plaintiff must show that: (1) plaintiff owns a valid protectable mark; and (2) defendant's use of a similar mark is likely to cause consumer confusion as to the origin or association of the goods or services." *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 135–36 (2d Cir. 2023) (citing *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings*, 696 F.3d 206, 216–17 (2d Cir. 2012)).

In regards to the first element, 15 U.S.C. § 1115(a) provides that registration of a trademark on the principal register of the United States Patent and Trademark

Office is prima facie evidence of the validity of the registered mark and "of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . ." 15 U.S.C. §1115(a). Further, to the extent that the right to use the registered mark has become incontestable under 15 U.S.C. § 1065, the registration shall be conclusive evidence – as opposed to *prima facie* evidence – of exclusive rights to use the mark, and is subject to a much narrower range of defenses or defects. *Id.* § 1115(b).

As to assessing the second element, the likelihood that an allegedly infringing product will create consumer confusion, the Second Circuit has prescribed the eight-factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). *See Vans, Inc.*, 88 F.4th at 136. The eight factors are:

> (1) strength of the trademark; (2) similarity between the two marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood the prior owner may "bridge the gap" in the markets for their products; (5) evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) quality of the defendant's product compared with the plaintiff's product; and (8) sophistication of the buyers. [*Polaroid*, 287 F.2d at 495.] Collectively, these factors establish whether the allegedly infringing product creates consumer confusion.

*Id.*

### B. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike

affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding." *Shunock v. Apple, Inc.*, 738 F. Supp. 3d 371, 377 (S.D.N.Y. 2024) (citation omitted). In *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019) ("*GEOMC*"), the Second Circuit affirmed that a plaintiff seeking that relief must show that "(1) 'there is no question of fact which might allow the defense to succeed' when applying the 'plausibility' standard set by *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007); (2) 'there is no question of law which might allow the defense to succeed'; and (3) the plaintiff 'would be prejudiced by the inclusion of the defense.'" *S.E.C. v. Leibowitz*, No. 25-cv-02155 (JLR), 2025 WL 2056026, at *3 (S.D.N.Y. July 23, 2025) (citing *GEOMC*, 918 F.3d at 96–99).

With respect to the first prong of *GEOMC*, factual sufficiency, the *Twombly* standard does not require a pleading's factual allegations to be "detailed," but they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, while a pleading must be "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action," it must contain "only enough facts" as to make it "plausible on its face." *Id.* at 555, 570.

With respect to the second prong of *GEOMC*, legal insufficiency, the courts have found that "the bar for so finding is a demanding one: a 'court may strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them.'" *Leibowitz*, 2025 WL 2056026, at *8 (quoting *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 516 (E.D.N.Y. 2013)). Finally, "[w]hether the third . . .

factor[ ], prejudice, should be a basis for dismissing . . . an otherwise valid affirmative defense will normally depend on when the defense is presented." *GEOMC*, 918 F.3d at 98. "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010). Nevertheless, a "factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.*

### C. Motion to Dismiss

"A motion to dismiss counterclaims is governed by the well-known standard for determining a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted." *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 171 (W.D.N.Y.2003). That is, "counterclaims must meet the pleading requirements of Rule 8(a), as interpreted by [*Twombly* ] and [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)], in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 360–61 (W.D.N.Y. 2014) (citing *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 CIV. 5105 NRB, 2014 WL 3950897, at *7 (S.D.N.Y. Aug. 13, 2014)).

A claim must be dismissed under Rule 12(b)(6) "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief . . . ." *Twombly*, 550 U.S. at 578. Thus, to survive review under Rule 12(b)(6), a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Maguire included six affirmative defenses in her answer to Bernstein's complaint: (1) failure to state a claim; (2) parody and First Amendment; (3) no likelihood of confusion; (4) laches, estoppel, and acquiescence; (5) unclean hands; and, (6) non-dilution / weakness of mark. ECF No. 12 at 33–34. Bernstein argues that Maguire's second and part of the third, fourth, fifth, and sixth affirmative defenses should be stricken. ECF No. 13-1. It also argues that Maguire's two counterclaims should be dismissed.

### A. Second and Third Affirmative Defense: Parody & First Amendment

In her second affirmative defense, Maguire maintains that her use of "Better Call Sam" is a protected expressive parody of a well-known fictional character, which qualifies as constitutionally-protected speech under the First Amendment and does not infringe Plaintiff's marks. ECF No. 12 at 33. In addition, a part of Defendant's third affirmative defense argues that her "branding is immediately recognizable as a cultural parody not associated with Plaintiff." *Id.* at 34. Plaintiff argues that these affirmative defenses should be stricken because parody is not an affirmative defense,

and Maguire's use of the mark is not entitled to First Amendment protection.

At the outset, the Court notes that it shares Bernstein's skepticism that Maguire has plausibly alleged parody at all. *See, e.g., Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) ("The Supreme Court has defined parody as 'the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works.'") (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 580 (1994)).

Further, the Court agrees with Bernstein that "'[i]n a traditional trademark infringement suit founded on the likelihood of confusion rationale, the claim of parody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval.'" *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 179 n.18 (N.D.N.Y. 2011) (citing *Schieffelin & Co. v. Jack Co. of Boca*, 725 F. Supp. 1314, 1323 (S.D.N.Y. 1989)); ECF No. 13-1. As the Ninth Circuit has observed:

> Some parodies will constitute an infringement, some will not. But the cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution. There are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark. A non-infringing parody is merely amusing, not confusing.

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) (quoting McCarthy on Trademarks, § 31.38[1], at 31–216 (rev. ed. 1995)). Accordingly, it would seem that the defense does not qualify as an affirmative defense. *See Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-00842S-F, 2014 WL 2028426, at *5 (W.D.N.Y. Sept. 15, 2014) (striking affirmative defenses where if

proven, plaintiffs would be unable to prove their claims).

Nevertheless, it is not clear to the Court that Bernstein would be prejudiced by the time and expense of increased discovery and litigation on an issue likely to be litigated in any event. Although potentially redundant to any attempts Maguire might make to show Bernstein cannot satisfy the element of likelihood of confusion, it is not clear how Maguire's asserted parody affirmative defense will prejudice Bernstein at this point. Accordingly, Bernstein's motion to strike the second and third defenses is denied without prejudice at this time.

### D. Fourth Affirmative Defense: Laches, Estoppel, Acquiescence

In her fourth affirmative defense, Maguire asserts, without explanation or support, that Bernstein's "claims are barred in whole or in part by the equitable doctrines of laches, estoppel, and/or acquiescence." ECF No. 12 at 34. She does not support any of these three defenses with factual allegations or legal justification. Plaintiff argues these defenses are "boilerplate affirmative defense[s] that [are] insufficiently pled." ECF No. 13-1 at 9. The Court agrees.

### i. Laches

Laches "bars a claim when a defendant has suffered prejudice because of a plaintiff's unreasonable and inexcusable delay in bringing the claim." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426–28 (S.D.N.Y. 2010) (citing *Legislator 1357 Ltd. v. Metro–Goldwyn–Mayer, Inc.*, 452 F. Supp. 2d 382, 391 (S.D.N.Y.2006)). In asserting laches, the defendant must establish that "(1) the plaintiff knew, or should have known, of his claim; (2) the plaintiff inexcusably delayed in taking action; and

(3) the defendants were prejudiced as a result." *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 95 (E.D.N.Y. 2021) (citation and internal quotation marks omitted).

Despite Maguire's bare assertion here that Bernstein's claim is barred by laches, that defense lacks both legal and factual support. There is no indication in the pleadings that Bernstein delayed in bringing this action or that Maguire suffered any prejudice as a result of any conduct by Bernstein. Further, Bernstein initiated this suit in March 2025, less than two years from May 2023, the date Maguire listed as the "First Use Anywhere" date in her trademark application for "Better Call Sam if You're in a Jam, you Better Call Sam!" ECF No. 12 at 59. This is well within the six year period beyond which "there is a presumption of laches so that the trademark owner must show the inequity of dismissal on that basis." *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). Thus, there is no question of fact or law that might allow a laches defense to succeed. Bernstein would also be prejudiced by the added time and expense required to litigate the issue. Maguire's affirmative defense of laches must therefore be stricken.

### ii. Estoppel

The equitable principle of estoppel may be raised in a trademark infringement action if the defendant shows that "'(1) plaintiff's misleading communication, with plaintiff's knowledge of the true facts, prompted the defendant to infer that the plaintiff would not enforce its rights against the defendant; (2) the defendant relied on that conduct; and (3) the defendant would be prejudiced if the plaintiff were allowed to bring suit.'" *Rd. Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Rd. Dawgs*,

11

*Inc.*, 679 F. Supp. 2d 259, 279–80 (N.D.N.Y. 2009) (quoting *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 276 (S.D.N.Y. 2002). There are absolutely no facts alleged in Maguire's answer that could satisfy any of the first two elements. Therefore, because there is no question of fact or law that might allow an estoppel defense to succeed, and Bernstein would be prejudiced by the added time and expense required to litigate the issue, Maguire's affirmative defense of estoppel must be stricken.

### iii. Acquiescence

Acquiescence is a defense to trademark infringement where the defendant can show that: (1) plaintiff actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused undue prejudice to defendant. *Coach, Inc.*, 756 F. Supp. 2d at 426–28 (citing *ProFitness Physical Therapy Center v. Pro–Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002)). Similar to the estoppel defense, there are absolutely no facts alleged in Maguire's answer that could satisfy any of the first two elements of the acquiescence defense. Therefore, because there is no question of fact or law that might allow an acquiescence defense to succeed, and Bernstein would be prejudiced by the added time and expense required to litigate the issue, Maguire's affirmative defense of estoppel must be stricken.

### E. Fifth Affirmative Defense: Unclean Hands

In her fifth affirmative defense, Maguire asserts the doctrine of "unclean

hands," claiming that Bernstein's assertion of exclusive rights to any variation of the phrase "Call Sam" is "overreach." ECF No. 12 at 34. Bernstein argues that Maguire's claim is not a valid basis to assert the doctrine of unclean hands. The Court agrees.

"The doctrine of unclean hands [under federal law] is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 1:18-CV-00407-NG-RLM, 2022 WL 1665453, at \*9 (E.D.N.Y. May 25, 2022) (quoting *Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998)). Nevertheless, the fact that a party has brought a lawsuit in which the party seeks protection for trademark infringement, allegedly in bad faith, cannot be the basis of a defense of unclean hands, because the "'[u]nclean hands must relate to the getting or using the alleged trademark rights.'" *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 518 (S.D.N.Y. 2003) (citing *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F. Supp. 2d 430, 445 (S.D.N.Y. 1998); *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983)).

Here, Maguire does not allege any improper conduct by Bernstein in "getting or using" the trademark rights for CALL SAM. She alleges "unclean hands" only in the context of Bernstein's attempts to enforce his rights in his registered trademark in the instant litigation. Therefore, because there is no question of fact or law that might allow an unclean hands defense to succeed, and Bernstein would accordingly be prejudiced by the added time and expense required to litigate the issue, Maguire's affirmative defense of unclean hands must be stricken.

**F. Sixth Affirmative Defense: Non-dilution / Weakness of Mark**

In her sixth affirmative defense, Maguire asserts that "[Bernstein]'s mark is geographically limited and not famous or distinctive in New York, especially in light of the parody context and [Bernstein]'s own founder's retirement." ECF No. 12 at 34. Bernstein argues that Maguire's claims in this regard are both irrelevant to its claims and an insufficient basis to preclude relief for trademark infringement.

To establish a claim of dilution under the Federal Trademark Dilution Act ("FTDA"), a plaintiff must show that:

> "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."

*Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004) (quoting *Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 431 (M.D.N.C. 2003)).

By contrast, as noted above, to establish a claim of trademark infringement – as Bernstein alleges here – the plaintiff must show that (1) plaintiff owns a valid protectable mark, and (2) defendant's use of a similar mark is likely to cause consumer confusion as to the origin or association of the goods or services. *Vans, Inc.*, 88 F.4th at 135–36. In evaluating likelihood of confusion, the reviewing court must consider, among other things, the strength of the mark, proximity of the product, likelihood prior owner may "bridge the gap" in the market, and evidence of actual confusion. *Id.*

To be sure, trademark infringement and trademark dilution are two very

14

different claims. As such, evidence of neither famousness nor geographic limitation are elements of the trademark infringement claims presently before the Court. Nevertheless, the factors that the Court must consider with respect to likelihood of confusion of the trademark infringement claim overlap to some degree with the elements of dilution. For instance, the Court must consider the proximity of the products and evidence of actual confusion, both of which require the court to "evaluate the likely effect on consumers of the marks' similar and dissimilar features with a focus on market conditions, even if the products appear to be adequately different in a non-marketplace setting." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005).

In short, although potentially redundant to any attempts Maguire might make to show Bernstein cannot satisfy the element of likelihood of confusion, it is not clear how Maguire's asserted "Non-Dilution/Weakness of Mark" affirmative defense will prejudice Bernstein at this point. Accordingly, the motion to strike this defense is denied without prejudice at this time.

### G. Maguire's Counterclaims

In her two counterclaims, Maguire seeks declaratory judgments of non-infringement on the basis that there is no likelihood of confusion and her use of the mark is a parody, and on the basis that her use is a protected non-commercial or expressive fair use / parody under the Lanham Act and the First Amendment. ECF No. 12 at 34–35. Bernstein observes that Maguire fails to support her two counterclaims with specific factual allegations, leaving only bald assertions of legal

conclusions. Further, Bernstein argues that even based on facts alleged throughout Maguire's answer, her two counterclaims fail to state a plausible claim because the facts that Maguire does allege indicate that she is using the mark in a commercial context. *See, e.g., Jack Daniel's Props., Inc.*, 599 U.S. at 159 (quoting *Yankee Publishing Inc. v. News Am. Publishing Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("'the trademark law generally prevails over the First Amendment' when 'another's trademark (or a confusingly similar mark) is used without permission' as a means of 'source identification.'").

Two factors figure keenly in the Court's consideration of Bernstein's motion to dismiss Maguire's counterclaims. First, despite ample opportunity to do so,[1] Maguire has failed to respond to Bernstein's motion to dismiss her counterclaim in any fashion. *See, e.g., Duffy v. WM Res., Inc.*, No. 24-CV-6486-FPG, 2025 WL 219107, at *2 (W.D.N.Y. Jan. 16, 2025) (citing *United States v. Weathers*, No. 22-CV-243S, 2024 WL 3431054, at *11 (W.D.N.Y. July 16, 2024) ("Typically, a plaintiff's failure to respond to a motion to dismiss constitutes a waiver of any argument the plaintiff might have raised.").

Second, as the Second Circuit has recognized, the district court has broad discretion to decline jurisdiction under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, based on its consideration of the following factors:

> (1) whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether

---

[1] *See, e.g.,* the Court's text order at ECF No. 14, which extended Maguire's time to respond, despite her failure to respond to Bernstein's motions to strike and dismiss (ECF No. 13), and the Clerk's Office's attempts to verify her admission in this district. More than 3 months have elapsed since that extension.

> [such] a judgment would finalize the controversy and offer relief from
> uncertainty; (3) whether the proposed remedy is being used merely for
> procedural fencing or a race to res judicata; (4) whether the use of a
> declaratory judgment would increase friction between sovereign legal
> systems or improperly encroach on the domain of a state or foreign court;
> (5) whether there is a better or more effective remedy, . . .; and (6)
> whether concerns for judicial efficiency and judicial economy favor
> declining to exercise jurisdiction . . . .

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023)

(internal quotation marks and citations omitted). "Inherent in district courts' broad .

. . discretion to decline jurisdiction under the DJA . . . is a similarly broad discretion

to weigh the factors" the Second Circuit has enumerated. *Id.* at 100 (internal

quotation marks and citation omitted). "[N]o one factor is sufficient, by itself, to

mandate that a district court exercise – or decline to exercise – its jurisdiction to issue

a declaratory judgment." *Id.*

Here, the Court has thoroughly considered each of the factors identified by the

Second Circuit as relevant to the decision to decline jurisdiction under the DJA, and

finds good cause to decline jurisdiction to consider Maguire's counterclaims for

declaratory judgment in the instant case. Of particular import, the Court notes that

the resolution of Bernstein's two trademark infringement claims will also serve the

purpose of clarifying whether and to what extent Maguire's mark infringes upon

Bernstein's, which renders the counterclaims redundant. *See, e.g., Continuum Grp.*

*LLC v. 666 Performance, LLC*, No. 24 CIV. 5834 (LGS), 2025 WL 1489255, at *2

(S.D.N.Y. May 23, 2025) ("the Counterclaim's request for declaratory relief of non-

infringement "is entirely duplicative of [TCG's] [trademark infringement] claim -- and

any resolution of the merits of [TCG's] claim will necessarily resolve [666P's]

counterclaim."). Additionally, the Court finds that concerns for judicial efficiency and judicial economy favor declining jurisdiction. *See, e.g., Bank v. NFL Props. LLC,* No. 25-CV-3981 (CM), 2025 WL 2961849, at *7 (S.D.N.Y. Oct. 20, 2025), reconsideration denied, No. 25-CV-3981 (CM), 2025 WL 3090126 (S.D.N.Y. Nov. 5, 2025) (finding judicial economy is not served by considering a declaratory judgment action because "the proper way of the proper way of dealing with trademark disputes" is through a lawsuit for trademark infringement).

Maguire's counterclaims are therefore dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff Sam Bernstein Law's motion to strike [ECF No. 13] is granted in part and denied in part; and Defendant Samantha Maguire's Fourth and Fifth Affirmative Defenses [ECF No. 12] are STRICKEN; and it is furtherORDERED that Plaintiff Sam Bernstein Law's motion to dismiss Defendant Maguire's counterclaims is GRANTED to the extent that the Court opts to exercise its discretion to decline jurisdiction over Defendant Maguire's counterclaims for declaratory judgment under the Declaratory Judgment Act, and dismisses the counterclaims without prejudice.

This matter will be referred to a Magistrate Judge for pretrial matters by separate order.

SO ORDERED.

Dated:    January 8, 2026
          Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge